IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

**DAVID MARSHALL**                                                                                       **PLAINTIFF**

v.                                                                    CIVIL ACTION NO. 2:20-cv-146-KS-RHWR

**KILOLO KIJAKAZI,**[1]
*Acting Commissioner of Social*
*Security Administration*                                                                              **DEFENDANT**

## REPORT AND RECOMMENDATION

BEFORE THE COURT is Plaintiff David Marshall's petition for judicial review of the decision of the Commissioner of the Social Security Administration ("Defendant" or "Commissioner"), denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1382c(a)(3), for lack of disability. Compl. [1]. The Commissioner argues that the Court should affirm the decision because it is supported by substantial evidence and comports with relevant legal standards. Answer [9]. Having considered the submissions of the parties, the record, and relevant legal authority, the undersigned United States Magistrate Judge finds that the Administrative Law Judge properly considered the opinion of Dr. Joanna McCraney in determining Plaintiff's residual functional capacity, the ALJ's residual functional capacity finding is supported by substantial evidence and the Commissioner's decision should be affirmed.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi is automatically substituted, in place of Andrew Saul, as Defendant in this action. No further action need be taken to continue this suit. 42 U.S.C. § 405(g).

1

I. **BACKGROUND**

Plaintiff David Marshall ("Plaintiff" or "Marshall") filed applications for Title II and XVI benefits on August 8, 2018, alleging disability beginning on January 1, 1998. Admin. R. [10] at 17. The Commissioner denied Marshall's applications initially and upon reconsideration. *Id*. Marshall then requested a hearing before an Administrative Law Judge ("ALJ"), who held the hearing on October 4, 2019. *Id*. Plaintiff was represented by counsel at the hearing. *Id*.

At the hearing, Marshall moved to amend the alleged onset date of his disability to August 8, 2018, the date he filed his Title XVI claim. *Id*. Marshall further moved to withdraw the Title II portion of his disability claim. *Id*. The ALJ subsequently granted Marshall's motions. *Id*.

The ALJ rendered an unfavorable decision on October 21, 2019, finding that Marshall was not under a disability within the meaning of the Social Security Act, from August 8, 2018, through the date of the decision. *Id*. at 36. The Appeals Council denied Plaintiff's request for review, and he has appealed that decision to this Court. *Id*. at 10.

II. **DISCUSSION**

A. Standard of Review

The Court's review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner, *Richardson v. Perales*, 402 U.S. 389, 401 (1971), and whether the correct legal standards were applied. 42 U.S.C. § 405 (g); *Falco v. Shalala*, 27 F.3d

160, 162 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401 (quoting *Consolidated Edison v. NLRB*, 305 U.S. 197, 229 (1938)). The Fifth Circuit has further held that substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).

Conflicts in the evidence are for the Commissioner to decide, and if substantial evidence is found to support the decision, the decision must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). A district may not reweigh the evidence, try the case de novo, or substitute its judgment for that of the Commissioner, *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988), even if it finds that the evidence preponderates against the Commissioner's decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell*, 862 F.2d at 475.

A district court must, however, despite its limited role, "scrutinize the record in its entirety to determine the reasonableness of the decision ... and whether substantial evidence exists to support it." *Randall v. Sullivan*, 956 F.2d 105, 109 (5th Cir. 1992). If the Commissioner's decision is supported by the evidence, then it is conclusive and must be upheld. *Perales*, 402 U.S. at 390.

B. <u>Standard for Entitlement to Social Security Benefits</u>

A claimant must prove that he or she suffers from a disability in order to be qualified for benefits. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). The Social Security Act defines "disability," in relevant part, as the

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months
> . . .

42 U.S.C. § 1382(a)(3)(A). The Commissioner typically employs a five-step sequential process to determine whether a claimant is disabled within the meaning of the Social Security Act. 20 C.F.R. § 416.920; *see also Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). This five-step analysis is as follows:

> First, the claimant must not be presently working. Second, a claimant must establish that he has an impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities. Third, to secure a finding of disability without consideration of age, education, and work experience, a claimant must establish that his impairment meets or equals an impairment enumerated in the listing of impairments in the appendix to the regulations. Fourth, a claimant must establish that his impairment prevents him from doing past relevant work. Finally, the burden shifts to the [Commissioner] to establish that the claimant can perform relevant work. If the [Commissioner] meets this burden, the claimant must then prove that he cannot in fact perform the work suggested.

20 C.F.R. § 416.920 (a)(4)(i)-(v); *see also* Salmond v. Berryhill, 892 F.3d 812, 817 (5th Cir. 2018); *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). A claimant bears the burden of proof with respect to the first four steps of the inquiry; the burden shifts to the Commissioner at step five. *Newton v. Apfel,* 209 F.3d 448, 453 (5th Cir. 2000).

C. <u>The Administrative Law Judge's Decision</u>

The ALJ found at the first step that Plaintiff had not engaged in substantial gainful activity after the alleged onset date of August 8, 2018, and at the second step that Plaintiff had the severe impairment of coronary artery disease. Admin. R. [10] at 21. The ALJ concluded that the "medically determinable impairments significantly limit the ability to perform basic work activities as required by SSR 85-28." *Id.*

At the third step, the ALJ determined that Plaintiff's impairment did not meet or equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 26. The ALJ noted that the medical records in evidence failed to document "clinical findings of any physician that suggest the claimant's impairments satisfy" the above-mentioned severity requirements. *Id.* at 27. The ALJ further noted that "[n]o treating or examining physician has recorded findings equivalent in severity to the criteria of any listed impairment, nor does the evidence show medical findings that are the same or equivalent to those of any listed impairment." *Id.* Next, the ALJ determined after "careful consideration of the entire record" that Plaintiff had the residual functional capacity "to perform light work as defined in 20 CFR 416.967(b) except he should avoid even moderate exposure to pulmonary irritants such as fumes, odors, dust, gases, poorly ventilated areas, or chemicals." *Id.*

At the fourth step, the ALJ concluded that Plaintiff had no past relevant work. *Id.* at 34. At the fifth step, the ALJ determined that given Plaintiff's residual functional capacity, age, education, and work experience, "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." *Id.* at 35 (citation

omitted). These include a small parts assembler, inspector/hand packager, and a ticket maker. *Id*. Accordingly, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act. *Id*. at 36. Plaintiff appealed that decision to this Court. Compl. [1].

D. <u>The ALJ Properly Considered the Opinion of Dr. Joanna McCraney in Determining Plaintiff's Residual Functional Capacity.</u>

Plaintiff alleges one assignment of error: "[t]he ALJ's residual functional capacity determination is unsupported by substantial evidence because he failed to properly evaluate the opinion of consulting clinical psychologist, neuropsychologist, Joanna McCraney, Ph.D." Pl.'s Br. [12] at 7. Plaintiff argues that the ALJ improperly concluded that Dr. McCraney's opinion was unpersuasive and unsupported by the longitudinal history of the case. *Id*. at 10. Specifically, Plaintiff asserts that the "ALJ failed to consider a number of factors that support Dr. McCraney's opined limitations including the reasons that Plaintiff failed to obtain treatment, the nature of mental illness in general, and the importance that subjective reporting has on a provider's treatment and diagnosis." *Id*.

In response, the Commissioner argues that "the ALJ properly explained that Dr. McCraney's opinion was not persuasive, as it was not supported by the treatment records, her own evaluation findings, and Plaintiff's own testimony." Def.'s Resp. in Opp'n. [13] at 8. The Commissioner argues that the ALJ correctly found that Dr. McCraney's opinion was inconsistent with the other opinion evidence in the record." *Id*.

The ALJ's treatment of medical opinions is governed by the revised rules in 20 C.F.R. § 416.920c, which apply to claims filed after March 27, 2017, such as the claims in the present case. Pursuant to 20 C.F.R. § 416.920c(a), the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [Plaintiff's] medical sources." The regulations provide that the ALJ must articulate in their decision the persuasiveness of all medical opinions. 20 CFR § 416.920c(b). The regulation provides five factors for the ALJ to consider when evaluating medical opinions: (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other factors. 20 CFR § 416.920c(c). Of these factors, consistency and supportability are the most important in determining persuasiveness. 20 CFR §416.920c(b)(2).

Here, the record confirms that the ALJ explicitly reviewed the medical opinion of Joanna McCraney, Ph.D., in determining Plaintiff's residual functional capacity. Admin. R. [10] at 32. The ALJ began by citing Dr. McCraney's conclusion that "the [Plaintiff] was capable of cognitive function in the workplace with intact memory and concentration/attention. However, he was unlikely to interact with other people or cope with typical pressures and frustrations of an eight-hour workday without exacerbation of psychiatric symptoms." *Id*. The ALJ, however, found Dr. McCraney's opinion "unpersuasive," based on the record *Id*.

First, the ALJ determined that the "[t]he State Agency reviewing psychiatrist Scallorn rightly rejected the opinion of Dr. McCraney, which appeared based upon

7

subjective complaints of the claimant rather than objective medical evidence contained in her own evaluation." *Id.* at 32-33. The ALJ cited Dr. Scallorn's assessment of Plaintiff's mental disposition, which found "that he experienced "mild" restriction in understanding, remembering, or applying information, "mild" difficulties in interacting with others, "mild" difficulties in concentrating, persisting or maintaining pace, and "mild" problems adapting and managing oneself." *Id.* at 33. The ALJ also cited Dr. Scallorn's evaluation of Plaintiff's mental residual functional capacity and finding that Plaintiff "was capable of performing routine, repetitive tasks, interacting appropriately with others and completing tasks dependent on his desire to do so." *Id.*

Second, the ALJ cited the inconsistencies in Plaintiff's statements to Dr. McCraney with those he had made on the record. The ALJ noted that Plaintiff told Dr. McCraney that he has no friends but then testified at the hearing that he lived on a friend's property and went to their house to cook, do laundry, and hangout. *Id.* The ALJ also noted that Plaintiff's representation to Dr. McCraney that he had anger management and behavior control problems was inconsistent with the evidence in the record showing that he had no conflicts with the community or legal authorities since his release from prison. *Id.*

Next, the ALJ noted that Dr. McCraney's own report, detailing Plaintiff's behavior during his examination, was inconsistent with Plaintiff's representations of having anger management and behavioral issues at the examination. *Id.* at 33. The ALJ concluded based on Dr. McCraney's report, MDOC records and other functional data,

8

that Plaintiff's representations at his examination with Dr. McCraney were "unpersuasive." *Id.*

The ALJ also cited other medical opinions, including that of Dr. Carol Kossman, who determined, based on the medical evidence in the case record, that Plaintiff had the physical capacity to perform light work but should avoid even moderate exposure to pulmonary irritants such as fumes, odors, dust, gases, poorly ventilated areas, or chemicals. *Id.* at 33. The ALJ found Dr. Kossman's opinion to be "persuasive because it is consistent with and supported by the record evidence . . . ." *Id.* The ALJ also found Dr. Glenn James' opinion to be persuasive for the same reasons as Dr. Klossman's. *Id.* at 34.

After reviewing the record before the Court, the undersigned finds that the ALJ properly weighed Dr. McCraney's examination of Plaintiff against the other medical opinions and the record as a whole. The "ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *See Garcia v. Berryhill*, 880 F.3d 700, 705 n. 7 (5th Cir. 2018) (quoting *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000)). The court may not reweigh the evidence or substitute its judgment for the Commissioner's. *Harrell*, 862 at 475. The issue is not whether other conclusions are possible but whether the conclusion reached is supported by substantial evidence. *Selders*, 914 F.2d at 617. The undersigned finds that the ALJ's decision is supported by substantial evidence and recommends affirming the Commissioner's decision.

9

## III. **RECOMMENDATION**

Based on the above analysis, the undersigned United States Magistrate Judge finds that the Administrative Law Judge properly considered the opinion of Dr. Joanna McCraney in determining Plaintiff's residual functional capacity, the ALJ's residual functional capacity finding is supported by substantial evidence and the Commissioner's decision should be affirmed.

## IV. **NOTICE OF THE RIGHT TO OBJECT**

Pursuant to Local Uniform Civil Rule 72(a)(3),

> After service of a copy of the magistrate judge's report and recommendations, each party has fourteen days to serve and file written objections to the report and recommendations. A party must file objections with the clerk of court and serve them upon the other parties and submit them to the assigned district judge. Within seven days of service of the objection, the opposing party or parties must either serve and file a response or notify the district judge that they do not intend to respond to the objection.

L.U. Civ. R. 72(a)(3); *see* 28 U.S.C. § 636(b)(1).

An objecting party must specifically identify the findings, conclusions, and recommendations to which he objects. The District Judge need not consider frivolous, conclusive, or general objections. A party who fails to file written objections to the proposed findings, conclusions, and recommendations within fourteen days of being served a copy shall be barred, except upon grounds of plain error, from attacking on appeal any proposed factual finding or legal conclusion adopted by the Court to which he did not object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

**SIGNED,** this the 10th day of November, 2021.

*s/ Robert H. Walker*
ROBERT H. WALKER
UNITED STATES MAGISTRATE JUDGE